Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, October 30, 2006 2:18:56 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BUFFALO COAL CO., et al. | ) | CASE NO. 06-366 |
| | ) | |
| Debtor. | ) | Administratively Consolidated |

## MEMORANDUM OPINION

On October 27, 2006, this court ruled from the bench and approved the sale of certain assets belonging to Buffalo Coal Company (the "Debtor") to Vindex Energy Corporation ("Vindex") for the sum of $5,000,000. As part of that ruling the court denied and granted various objections to the sale. One of those objections was articulated by the Official Committee of Unsecured Creditors (the "Committee"), which requested that $3,055,000 of the sale proceeds be placed in escrow pending a final determination by the court as to the characterization of those funds, and to whom those funds should be paid. Consonant with the Committee's request, the court ordered that funds in that amount be placed in escrow by the Debtor, and the court set a telephone conference on October 30, 2006, to consider how to proceed to litigate the entitlement to the $3,055,000 escrow. The court is entering the memorandum opinion solely in regards to its decision to escrow a portion of the proceeds so that – consistent with the parties' request – the parties will have a better understanding of the court's oral ruling.[1]

## I. BACKGROUND

When the Debtor filed its May 5, 2006 Chapter 11 bankruptcy case, it alleged that it had a certain unexpired lease with the Carl DelSignore Family Trust ("CDS"). For its part, CDS argued that the

---

[1] The court reserves the right to vacate and reissue this Memorandum Opinion.

1

Debtor's lease with it expired pre-petition and that no lease existed for the Debtor to assume and assign. The court has not reached a determination of that issue at this time. If the lease did in fact exist, the parties have agreed that the cure amount required by § 365 is $3,055,000.

Notwithstanding CDS's contention that the lease was terminated, the Debtor packaged the lease and some other property for sale. Vindex stepped forward as the stalking horse bidder and ultimately submitted the only bid for the assets. The Asset Purchase Agreement ("APA") that the Debtor executed with Vindex states with regard to the CDS lease:

> 7.1    Seller shall obtain CDS's consent for the assumption of the CDS lease by Seller and for its assignment to Buyer, or Buyer and Seller shall negotiate a new lease between CDS and the Buyer for the real property that is the subject of the CDS Lease upon terms acceptable to Buyer in its sole discretion. If CDS executes a new lease with Buyer, the cure amount required under Section 6.7 [$3,055,000] shall be allocated and deducted from the Purchase Price and paid to CDS in lieu of a cure payment under Section 365 of the Bankruptcy Code.

(Document No. 265, Ex. A).

In fact, Vindex has executed a new lease with CDS.[2] In addition to the purported cure payment, CDS also has several other claims against the estate: a lease termination claim, a claim on a note secured by equipment, and a secured claim against an escrow account. CDS filed Claim No. 74 asserting a secured claim of $1,504,536, and filed Claim No. 75 asserting a secured claim of $2,502,638. In addition, CDS states that is has an accruing claim for administrative rent against the estate. CDS stated in open court that once it receives the $3,055,000 in lieu of cure amount, it will withdraw all claims against the estate.

The Committee has objected to the filed proofs of claim by CDS, and has filed a Motion for an Order Granting the Official Committee of Unsecured Creditors Authority to Pursue Certain Causes of Action Against the CDS Family Trust to recover fraudulent transfers under § 548. Furthermore, the Committee has filed an adversary proceeding to equitably subordinate CDS's claims under § 510(c), and has objected to CDS receiving any amount of money from the estate pursuant to § 502(d) of the

---

[2] It is not finally determined on the record whether this represents an assumption and assignment of the Debtor's lease, then the execution of a new lease, or just the execution of a new lease.

2

Bankruptcy Code.

## II. DISCUSSION

CDS has asserted that amounts due to it from the "Purchase Price" are about $3,055,000, and that it is entitled to this money because it represents a deal put together, privately, between Vindex and itself. CDS reaches this conclusion because it argues that its lease with the Debtor terminated pre-petition, and any leasehold interest that the Debtor once had is not property of the estate. CDS also pointed the court's attention to the fact that the Committee has apparently conceded that the lease terminated pre-petition and that the Debtor has itself committed to concede the point as well upon the closing of the sale. On those grounds, CDS has asserted that it is free to lease its property to whomever it wishes, on whatever terms it wishes, and that this court would not have jurisdiction over its actions. The Committee, however, asserts that CDS has negotiated an agreement by which it transfers its lease to Vindex and receives payment in satisfaction of its claims against the estate. For the following reasons, the court will afford the Committee and CDS an opportunity to litigate the characterization of the payment of the $3,055,000.

The amount of the cure for the CDS lease, should it have been property of the estate, is approximately the same as the lump sum payment that Vindex proposes to pay to CDS. In fact, the language in § 7.1 of the APA specifically refers to the amount of the cure that would be due to determine the amount of the lump sum payment. Since all objecting parties have conceded or have expressed their intention to concede the issue of the lease terminating prior to the bankruptcy filing, the court sees no basis to characterize the payment as a disguised cure payment.[3] However, the court recognizes that there is more to this case. CDS has orally asserted in open court that it has several claims against the estate: a lease termination claim; a claim on a note secured by equipment; a secured claim against an escrow account; and an accruing administrative claim for rent. CDS has filed two proofs of claim: Claim No. 74 asserting a secured claim of $1,504,536; and Claim No. 75 asserting a secured claim of $2,502,638. The Committee

---

[3] The court recognizes that the Debtor's withdrawal of its objection is contingent upon the closing of the APA. If the Debtor does not withdraw its objection, the court acknowledges that the termination of the lease prior to the filing of the bankruptcy remains an issue for litigation.

has objected to the two proofs of claim filed by CDS and is seeking to equitably subordinate the claims of CDS and authority to pursue fraudulent transfers against CDS under § 548. In conjunction with its objection, the Committee asserts that any payment of CDS's claims would violate the mandatory language of § 502(d) in light of the impending causes of action. If CDS is receiving a lump sum payment in consideration for the transfer of its lease, then the Committee's contentions have no merit. However, CDS has asserted in court documents and in open court that it is withdrawing its claims upon the completion of the APA "because it is not seeking to be paid twice." In fact, the Debtor and the West Virginia Department of Environmental Protection indicated at the sale hearing that they were counting on CDS releasing its claims against the estate upon the completion of the APA.

While the APA does not recite the withdrawal of claims as a specific term, the Committee argues that this development infers that there is a nexus between the payment from Vindex to CDS and the satisfaction of the CDS claims, i.e. a disguised compromise of CDS's claims against the estate. Through the compromise, CDS would be permitted to circumvent the safeguards of Fed. R. Bankr. P. 9019. While the court is unsure of the ultimate merits of the Committee's contentions because the Committee has not yet presented evidence of the nexus between CDS's withdrawal of its claims and the deals between Vindex, the Debtor, and CDS, the court desires to afford the Committee and CDS an opportunity to litigate the matter in order to preserve the integrity of the Bankruptcy Code and insure against manipulation of the sales process.

For these reasons, the court determined that the APA between the Debtor and Vindex could be approved, but that $3,055,000 of the proceeds that were designated to be "allocated and deducted from the purchase price," would be placed in escrow pending a determination of the characterization of that payment. For instance, if the transaction is truly outside the context of the bankruptcy proceeding and if it represents a private deal solely between the parties, then it would appear that CDS is entitled to the proceeds. On the other hand, if the amount represents a disguised compromise or payment of CDS's claims against the estate, then payment to CDS would be improper considering the Committee's pending equitable subordination action, as well as the intended § 548 action, in light of § 502(d). Likewise, if payment of the $3,055,000 is in consideration for CDS withdrawing all its claims from the estate, then the procedures in Fed. R. Bankr. P. 9019 should be observed, and parties in interest should be given the

4

opportunity to object. Therefore, the court must decide the characterization of the payment to the Trust. If the payment is truly a lump sum payment in consideration for the CDS lease, then the proceeds belong to CDS. If, however, the payment proves to be a disguised compromise of CDS's claims against the estate, then the court will consider the Committee's equitable subordination claim and the Committee's objections to CDS's proofs of claim.

It is hornbook law that a court is not bound by the form of a transaction, but that the court may look at the transaction substantively to determine the relative rights and obligations of the parties. *E.g.*, *Pepper v. Litton,* 308 U.S. 295, 307-8 (1939) ("In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate."); *In re Dornier Aviation*, 453 F.3d 225, 231 (4th Cir. 2006) (holding that recharacterization of claims is within the broad powers afforded a bankruptcy court in § 105(a) and facilitates the application of the priority scheme set forth in § 726); *Old Stone Bank v. Tycon Building Limited Partnership*, 946 F.2d 271, 273 (4th Cir. 1991) (holding that substance controls over the form of transactions in determinations of competing security interests in forfeited earnest money deposits). The court, therefore, will examine the substance of the transactions between Vindex, the Debtor, and CDS to determine the characterization of the payment rather than blindly relying on the form of the transaction and the language of the APA.

5