Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, November 15, 2006 5:21:13 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BUFFALO COAL CO., et al. ) | Case No. 06-366 |
| ) | |
| Debtor. ) | Administratively Consolidated |

## MEMORANDUM OPINION

On October 27, 2006, this court approved the sale of certain assets belonging to Buffalo Coal Company (the "Debtor") to Vindex Energy Corporation ("Vindex"). The purchase price was $5,000,000, but $3,055,000 of that amount was to be allocated and deducted from the purchase price for payment to the Carl DelSignore Family Trust ("CDS"), which is the lessor of certain real property to be leased to Vindex. In approving the sale, the court ordered that the $3,055,000 payment be placed in escrow by the Debtor pending a determination as to the entitlement to those funds.[1] CDS argues that the money belongs to it inasmuch as the funds originated from a separate transaction between Vindex and CDS whereby CDS agreed to enter a new lease with Vindex in consideration of that payment. The Official Committee of Unsecured Creditors (the "Committee") argues, inter alia, that the payment is a compromise of CDS's claims against the estate and that the required procedures for compromising claims under Rule 9019 have not been followed.

At the sale hearing, the court determined that sufficient indicia existed that the sale was doubling

---

[1] The court issued a summary memorandum on October 30, 2006, only a few hours after one was requested by the parties, so that the parties would have the advantage of the court's reasoning for a scheduling conference to be held later that same day. With the issuance of this Memorandum, the one entered on October 30, 2006, will be vacated.

1

as a compromise of CDS's claims against the estate thereby justifying further consideration of that issue by the court. For that reason, the court ordered the $3,055,000 payment be placed in escrow, treated the objection of the Committee as a contested matter under Rule 9014, and set a period for discovery. The purpose of this Memorandum is to set forth the reasons that the court ordered the escrow of the $3,055,000 payment.

## I. BACKGROUND

When the Debtor filed its May 5, 2006 Chapter 11 bankruptcy case, it claimed to have an unexpired lease of non-residential real property with CDS. The Debtor used the property to operate a coal mine, and the Debtor has the required permits from the West Virginia State authorities to engage in that activity. For its part, CDS argues that the Debtor's lease with it expired pre-petition and that no lease existed for the Debtor to assume and assign in its bankruptcy proceeding. The court has not reached a determination of that issue at this time. If the lease does in fact exist, the parties have agreed that the cure amount required by 11 U.S.C. § 365 is $3,055,000.

Notwithstanding CDS's contention that the lease was terminated, the Debtor packaged the lease, the related mining permits, and some of its other assets for sale. Vindex became the stalking horse bidder and ultimately submitted the only bid for the assets. The Asset Purchase Agreement ("APA") that the Debtor executed with Vindex states with regard to the CDS lease:

> 7.1   Seller shall obtain CDS's consent for the assumption of the CDS lease by Seller and for its assignment to Buyer, or Buyer and Seller shall negotiate a new lease between CDS and the Buyer for the real property that is the subject of the CDS Lease upon terms acceptable to Buyer in its sole discretion. If CDS executes a new lease with Buyer, the cure amount required under Section 6.7 [$3,055,000] shall be allocated and deducted from the Purchase Price and paid to CDS in lieu of a cure payment under Section 365 of the Bankruptcy Code.

(Document No. 265, Ex. A).

In fact, Vindex and CDS have agreed to execute a new lease at the closing of the APA.

CDS has filed two secured claims against the Debtor's estate. CDS filed Claim No. 74 asserting a secured claim of $1,504,536, and Claim No. 75 asserting a secured claim of $2,502,638. CDS claims to be secured by certain equipment, and by an escrow account. In addition, CDS asserts that is has an

2

accruing claim, yet unfiled, for administrative rent against the estate.

Several objections exist to CDS's claims against the Debtor's estate and CDS is subject to various causes of action by competing secured creditors, the Debtor's estate, and/or the Committee. For example, on September 25, 2006, the Committee objected to CDS's proofs of claim on several grounds, two of which are that the Debtor is neither an obligor nor a guarantor on a note held by CDS that it claims is due, and that any damages arising out of the parties' lease agreement are mitigated with the execution of a new lease with Vindex. On September 28, 2006, the Committee filed a motion for an order to grant it the authority to commence a fraudulent conveyance action pursuant to §§ 544, 548, and 550 of the Bankruptcy Code to avoid over $2,500,000 in transfers made by the Debtor to CDS. The gravamen of the proposed complaint, consistent with the Committee's claims objections, is that the Debtor paid CDS on a promissory note that was not owed by it, but was owed by one of its shareholders, C&G Energy. Also, on September 29, 2006, the Committee filed an action to equitably subordinate the CDS claims against the Debtor's estate pursuant to § 510(b) of the Bankruptcy Code. The gravamen of that complaint is that C&G Energy caused the Debtor to grant a security interest in certain assets to secure the obligation under the note that C&G Energy owed to CDS. The Committee alleges, inter alia, that the obligation due under the note is a claim for damages arising out of the sale of a security; thus, the obligation is subordinated under the express language of § 510(b). Moreover, the Committee, in its limited objection to the sale of the Debtor's assets, asserts that since CDS has taken the position that its lease with the Debtor terminated pre-petition, it is not entitled to any cure amount, including the $3,055,000 payment, and given that it has, or will enter into, a new lease.

The Debtor's bonding company, Lyndon Property Insurance Company ("Lyndon"), asserts that it has a secured claim in a $2,000,0000 collateral trust account. CDS claims a competing security interest in the same account, and the relative priorities in that account have not yet been determined by the court.

At the October 25, 2006 sale hearing, CDS supported the sale and represented in open court, as well as in court documents, that it would withdraw all its claims from the Debtor's estate should the sale be approved and consummated with it receiving the $3,055,000 payment as contemplated by the APA. The purported reason for withdrawing the claims is that CDS is "not seeking to be paid twice." No requirement exists in the APA that CDS withdraw its claims, but subsequently, both the Debtor and the

3

West Virginia Department of Environmental Protection (the "DEP") stated that they were "counting on" the withdraw of CDS's claims after the sale closed. The Committee objects to the proposed transaction being approved as part of the sale hearing on the grounds that it represents a compromise of CDS's claims against the estate without following the procedures or standards of Fed. R. Bankr. P. 9019. The Committee also objects to any payment being issued to CDS on the basis that such a payment would be in contravention of 11 U.S.C. § 502(d) inasmuch as that Section prohibits the payment of money from the estate to a creditor that has not yet paid the estate on a fraudulent transfer liability.

Vindex, CDS, and the Debtor all encouraged the court to approve the sale as presented because absent court approval of the $3,055,000 payment directly to CDS, a danger exists that Vindex would walk away, or that CDS would simply refuse to enter a new lease with Vindex.

## II. DISCUSSION

In its October 27, 2006 ruling, the court approved the sale of the Debtor's assets, but determined that the $3,055,000 payment due CDS would be placed in escrow pending a determination as to the character of those funds. The court ordered the escrow of the funds because, objectively, the parties' proposed transaction has the appearance of a compromise of claims, and the escrow is necessary to preserve the issue of whether or not the $3,055,00 payment to CDS is in fact a separate transaction between Vindex and CDS that is outside the purview of the bankruptcy estate. If the transaction is determined to be a compromise of claims, then – while claims may be compromised within an 11 U.S.C. § 363(b) sale – the required notices, procedures and standards governing a Rule 9019 compromise should be adhered to during the sale process.

A debtor's decision to sell property outside the ordinary course of business under § 363(b) is reviewed by the court for compliance with the business judgment rule, *i.e.*, the court must ensure that the debtor is making a decision that is not based on self-interest or self-dealing, and that the decision to sell is made on an informed basis, in good faith, and in the honest belief that the sale is in the estate's best interest. *Black's Law Dictionary* 212 (8th ed. 2004). *See also In re G.S. Distrib.*, 331 B.R. 552, 559 (Bankr. S.D.N.Y. 2006) ("In determining whether to approve a proposed sale under this section, courts require that the sale be based upon the sound business judgment of the debtor."); 3 *Collier on Bankruptcy* ¶ 363.02[1][f] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006) ("In determining whether to

4

approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test."). In determining if the business judgment rule is satisfied, a sale is generally reviewed against four requirements: " '(1) a sound business reason or emergency justifies a pre-confirmation sale; (2) a sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to parties-in-interest; and (4) the purchase price is fair and reasonable.' " *In re Lady H Coal Co.*, 193 B.R. 233, 243 (Bankr. S.D.W. Va. 1996) (citation omitted). A debtor's decision to sell assets outside the ordinary course of business requires at least twenty days notice to parties-in-interest. Fed. R. Bankr. P. 6004(a).

By comparison, a debtor's decision to compromise a claim against the estate is based either on the bankruptcy court's equitable powers under 11 U.S.C. § 105, or pursuant to § 363(b). *E.g.*, *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l)*, 136 F.3d 45, 50 n.4 (1st Cir. 1998) (questioning whether the bankruptcy court's power to approve settlements was found in § 363(b), the general equitable powers prescribed in § 105, or whether such power is simply inherent to the judicial forum."). A decision to compromise a claim is also reviewed under the business judgment test. *E.g.*, *In re OptInRealBig.com, LLC*, 345 B.R. 277, 292 (Bankr. D. Colo. 2006) ("Where an application under Rule 9019 is appropriate, the Court's job is to determine whether a given settlement is fair and equitable to the estate. In making its determination, the Court gives some deference to the business judgment of the debtor-in-possession."). A review of that business judgment generally turns on the outcome of four factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3rd Cir. 2003). *See also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968) (same); *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929) (same). A compromise of claims under Rule 9019 serves the purpose of binding the bankruptcy estate and the creditor to the terms of the bargain struck by the parties. *OptInRealBig.com*, 345 B.R. at 291. A debtor's decision to compromise claims against the estate requires that a twenty-day notice be given to creditors, the United States trustee, and any other entity as the court may direct. Fed. R. Bankr. P. 9019.

Of course, a sale and a compromise of claims may be bundled together as a package. *E.g.*, *In re*

5

*Grupo Xtra of N.Y.*, No. 04-55200, 2006 U.S. App. LEXIS 3876 at *6 (9th Cir. Feb. 16, 2006) ("[I]rrespective of whether it was a compromise settlement or a sale, since the notice requirements were the same under Fed. R. Bankr. P. 6004 (sale) and 9019 (compromise), notice was properly given."); *In re Smith*, 349 B.R. 28 (Bankr. D. Idaho 2005) (noting that sales are advanced by "notice" and compromises are advanced by "motion," but concluding that notice of a sale that also compromised claims was proper).

Once bundled, however, the compromise must be noticed to creditors, and the bankruptcy court should make the independent determination that both the sale and the compromise should be approved. *E.g.*, *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 284 (B.A.P. 9th Cir. 2005) ("We now conclude that, when a cause of action is being sold to a present or potential defendant over the objection of creditors, a bankruptcy court must, in addition to treating it as a sale, independently evaluate the transaction as a settlement . . . ."); *Valucci v. Glickman, Berkovitz, Levinson & Weiner (In re Glickman, Berkovitz, Levinson & Weiner)*, 204 B.R. 450, 455 (E.D. Pa. 1997) (reviewing a sale order that compromised claims and remanding it to the bankruptcy court so that the bankruptcy court could make the determinations required under Rule 9019); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 294 (Bankr. D. Del. 2006) (noting the committee withdrew its objection to the sale hearing on the basis that it had reached a settlement of its dispute with a creditor's claims against the estate, and that the settlement was noticed separately from the sale hearing pursuant to Rule 9019); *Equity Broad. Corp. v. Shubert (In Re Winstar Communs. Inc.)*, 284 B.R. 40, 46-47 (Bankr. D. Del. 2002) (noting that the sale and the compromise were bundled together as part of the same package).

In this case, the APA between the Debtor and Vindex does not mention any compromise of CDS's claims against the estate. Nowhere in the APA is there any requirement that CDS will withdraw its claims against the Debtor's estate once the APA closes, and once it receives its contemplated $3,055,000 payment. Objectively, CDS has filed $4,007,174 in secured claims against the estate, and it is withdrawing all of its claims after it receives a payment of $3,055,000 "in lieu of a cure payment under Section 365 of the Bankruptcy Code" for a lease that CDS claims does not exist. CDS stated that it will withdraw its claims because it is "not seeking to be paid twice," and both the Debtor and the DEP have indicated that they were counting on CDS withdrawing its claims at closing, which could be one reason why

6

the Debtor and the DEP supported the sale. The withdrawal of CDS's claims will also likely resolve the pending dispute between CDS and Lyndon over the $2,000,000 collateral trust account. The Committee objects that this transaction is a compromise of claims and that the standards and procedures of Rule 9019 have not been followed.

From theses facts, it appears to the court that the sale may in fact double as a compromise of CDS's claims against the estate. It is axiomatic that a court is not bound by the express terms of a proposed transaction, and that the court may look deeper to ascertain the true nature of the transaction. *See, e.g.*, *In re Dornier Aviation*, 453 F.3d 225 (4th Cir. 2006) (recharacterizing claims). For this reason, the court has ordered that the $3,055,000 payment due CDS under the APA be placed in escrow pending a determination of the character of those funds. If the payment is a compromise of CDS's claims, then that compromise will need to be noticed to creditors and reviewed by the court as to whether the compromise is a sound exercise of the Debtor's business judgment given the overall posture of this case.

### III. CONCLUSION

The court ordered the escrow of the $3,055,000 payment for the purpose of examining the substance of the transactions between Vindex, the Debtor, and CDS to determine the characterization of the payment rather than blindly rely on the form of the transaction and the language of the APA.