# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
BUFFALO COAL CO., et al.　　　　　　)　　Case No. 06-366
　　　　　　　　　　　　　　　　　　)
　　　　Debtor.　　　　　　　　　　　)　　Chapter 7

## MEMORANDUM OPINION

The Chapter 7 trustee for the bankruptcy estate of Buffalo Coal Company (the "Debtor"), seeks to employ the law firm of Thorp Reed & Armstrong, LLC ("TRA"), for the special purpose of pursuing causes of action against Virginia Electric Power Company ("VEPCO"). That litigation relates to an alleged breach of a 2005 coal supply agreement. Numerous parties object to the Trustee's application to employ TRA on the grounds that its employment is not authorized by 11 U.S.C. §§ 327(a), (c), or (e). Even if authorized under one or more of those subsections, they argue that the court should exercise its discretion to disapprove of TRA's retention based on the facts of this case.[1] For the reasons stated herein, the court will deny the objections and grant the Trustee's application to employ TRA.

## I. BACKGROUND

Before filing its May 5, 2006 Chapter 11 bankruptcy petition, the Debtor executed a coal supply agreement with VEPCO. Performance under that agreement accounted for substantially all of the Debtor's revenue. On March 9, 2006, VEPCO sued the Debtor, and related entities, in the United States District Court for the Eastern District of Virginia in a case styled *Virginia Electric Power Co. v. Buffalo Coal,*

---

[1] The objecting parties are: the Debtor; Gerald Ramsburg, a principal of the Debtor; H. Lynden Graham, Jr., the Chapter 7 trustee of the related case of United Energy Coal Co.; the United States Trustee; and VEPCO.

1

*Co.*, No. 3:06-cv-164. The complaint alleged that the Debtor breached certain contractual obligations and sought about $88 million in damages. In its answer, the Debtor asserted a counterclaim against VEPCO for $100 million. After the Debtor filed its bankruptcy petition, the Debtor and VEPCO executed an agreed order that dismissed the Virginia lawsuit without prejudice.

Meanwhile, TRA was selected as counsel to the Debtor's Official Committee of Unsecured Creditors. Because of its breach of contract claim against the Debtor, VEPCO was a Committee member, and was an active participant in the case while it proceeded in Chapter 11. VEPCO's claim against the Debtor is potentially the largest liability of the estate, and the Debtor's claim against VEPCO is potentially the largest asset of the estate. Although the United States Trustee initially opposed VEPCO's participation in the Committee due to the importance of the pre-petition litigation, the interested parties on the Committee were in favor of VEPCO's membership and participation.

After the sale of substantially all the Debtor's assets, the case converted to Chapter 7 on June 13, 2007.[2] Near the time of conversion, TRA had discussions with John W. (Jack) Teitz to see if he would be interested in being elected as the Debtor's Chapter 7 trustee. During those talks, TRA discussed the potential litigation against VEPCO, but never executed a deal with Teitz to hire it as special counsel in return for supporting his election as trustee. On September 10, 2007, the court appointed Teitz as the Chapter 7 trustee following a contested election. The law firm of Leech Tishman Fuscaldo & Lampl, LLC ("Leech Tishman"), represents the Trustee in the general administration of the Debtor's Chapter 7 estate.

In selecting a law firm to pursue the $100 million claim against VEPCO, the Trustee interviewed four different law firms, ultimately choosing TRA. The Trustee asserts that he chose TRA because: (1) TRA already performed an extensive analysis of the facts and law surrounding the litigation and was best suited to commence the litigation immediately; (2) TRA had extensive litigation experience and was well-

---

[2] On October 27, 2006, the court orally approved the sale of substantially all of the Debtor's assets to Vindex Energy Corporation, which is a designee of International Coal Group, Inc. After approval of the sale, but before the sale closed, the objectors assert that TRA attorneys performed unrelated legal work for International Coal Group without updating their Fed. R. Bankr. P. 2014 disclosure. The court will take up issues related to that purported failure when it makes a final determination on TRA's fee application for work performed while it was Committee counsel.

2

qualified to pursue the litigation; and (3) TRA had the resources to handle the rigors of complex and time-consuming litigation.

## II. DISCUSSION

The parties objecting to the Trustee's application to employ TRA assert that it cannot represent the Trustee based on the standards in 11 U.S.C. §§ 327(a), (c), and (e). Even if TRA's employment were authorized under those subsections, the objectors argue that the court should exercise its discretion to disapprove TRA's retention.

More specifically, the objectors assert that TRA is disqualified from representing the Trustee under the standards set forth in § 327(a), (c), and (e) on the basis that: (1) TRA formerly represented the Committee while this case was proceeding in Chapter 11, and it now seeks to sue VEPCO, who was a member of the Committee; (2) TRA is a creditor of the Debtor because it is owed in excess of $250,000 in legal fees, and, via litigation while this case was proceeding in Chapter 11, TRA arranged for the assignment of an unrelated secured claim to the Committee for the benefit of unsecured creditors; and (3) TRA did not formerly represent the Debtor, which makes 11 U.S.C. § 327(e) employment inapplicable. Relying on the court's discretion to disapprove the retention of otherwise qualified counsel, the objectors assert that TRA's retention should not be approved on the grounds that TRA obtained confidential information related to the Debtor's pre-petition dealings with VEPCO while representing the Committee. Also, the objectors assert that a shroud of impropriety – or at least the appearance of one – blankets TRA based on its strategic posturing in this case.

**A.      Legal Standard for Special Purpose Employment Under 11 U.S.C. § 327**

Importantly, TRA is not seeking to represent the Debtor's Chapter 7 estate with regard to its general administration – Leech Tishman is already performing that task. TRA is being engaged for special purpose employment; its sole task is to represent the Trustee in his litigation against VEPCO.

Normally, special purpose employment is granted under § 327(e) of the Bankruptcy Code. That section allows the Trustee to employ "an attorney that has represented the debtor . . . if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." § 327(e). As stated in its legislative history, § 327(e) is "most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after

3

the bankruptcy case has commenced would be detrimental to the progress of that other litigation." House Report No. 95-595, 95th Cong., 1st Sess. 328 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 38 (1978).

The objectors contend that employment under § 327(e) is not authorized in this case on the grounds that TRA did not previously represent the Debtor – it represented the Committee. As noted in *Collier on Bankruptcy*, a case law split exists as to whether an attorney must have previously represented the debtor before being employed under § 327(e):

> Courts are split with regard to whether section 327(e) is limited to situations in which the attorneys previously represented the debtor. . . . [T]he majority approach imposes an express requirement of prior representation of the debtor. . . . Yet some courts have ruled otherwise, and have permitted retention of counsel under section 327(e) where such counsel had not been retained by the debtor previously. Other courts have reasoned by analogy to section 327(e) to permit attorneys who have represented creditors to be retained for special purposes . . . . These courts are persuaded that the attorneys can be retained as long as their representation of the creditor does not create a conflict with the limited purpose for which they are being retained.

3 *Collier on Bankruptcy* ¶ 327.04[9][b] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2008).

In the event § 327(e) is not an available statutory subsection for the special purpose employment of an attorney that has not previously represented the debtor, then the only other applicable subsection authorizing the employment is § 327(a). Unlike § 327(e), however, § 327(a) imposes greater limitations on who may be employed to represent the estate. More specifically, § 327(a) only allows employment of professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . ." Textually, § 327(a) does not contain the same narrowly drawn language found in § 327(e): under § 327(a) the inquiry is with respect to the "estate," and under § 327(e) the inquiry is only with respect to the "matter on which such attorney is to be employed." Also, no requirement exists in § 327(e) that the attorney be "disinterested."

Finally, § 327(c) directs that an attorney is not disqualified from employment "solely because of such person's employment by or representation of a creditor unless there is objection by another creditor of the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." Section 327(c) does not otherwise preempt the basic employment requirements of §

4

327(a). *Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 316 (10th Cir. 1994).

Accordingly, being employed under § 327(e) is much easier than being employed under § 327(a). No requirement exists in § 327(e) that an attorney be disinterested. Moreover, the question as to whether an attorney represents or holds a disqualifying interest is limited to consideration of the matter in which the attorney is to be employed, not the estate as a whole.

Of course, the plain language of § 327(e) limits its applicability to attorneys that previously represented the debtor. While this may have been a Congressional "oversight," *In re Fondiller*, 15 B.R. 890, 892 (B.A.P. 9th Cir. 1981), clearly TRA did not previously represent the debtor, and, therefor, § 327(e) is not textually applicable to it. On the other hand, analyzing TRA's retention under the standards set forth in 11 U.S.C. § 327(a) – with respect to all matters of estate administration – makes no sense. Unlike Leech Tishman, TRA is not representing the Trustee "in carrying out the trustee's duties" with regard to all matters affecting estate administration. For example, TRA is not authorized to: assist the Trustee in the sale or abandonment of personal property, litigate Chapter 5 causes of action against other entities, or object to the filed claims of creditors other than the two claims filed in this case by VEPCO. Instead, TRA is seeking authorization to represent the estate only for the special purpose of suing VEPCO on causes of action arising out of an alleged pre-petition breach of contract. Logically, it makes better sense to analyze the legal standards for TRA's employment with reference to the precise matter in which TRA would be representing the estate rather than with reference to matters that will not fall within the scope of TRA's representation.

In addressing a similar special purpose employment application for a law firm that did not previously represent the debtor, the Court of Appeals for the Second Circuit applied the employment restrictions listed in § 327(a) only to the special purpose for which the trustee sought to employ counsel – reasoning by analogy to § 327(e):

> We nonetheless believe . . . that in applying sections 327(a) and (c) we should reason by analogy to 327(e), so that "where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself." [W]e "interpret that part of § 327(a) which reads that attorneys for the trustee may 'not hold or represent an interest

5

adverse to the estate' to mean that the attorney must not represent an adverse interest relating to the services which are to be performed by that attorney."

Thus, where the interest of the special counsel and the interest of the estate are identical with respect to the matter for which special counsel is retained, there is no conflict and the representation can stand. Accordingly, in this case we must ask whether – with respect to the special representation it has been hired to undertake – Caddell (1) holds or represents an interest that is adverse to the estate, and (2) is a "disinterested person."

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 622 (2d Cir. 2001).

Consonant with the standard articulated in *AroChem*, the court will review the Trustee's application to employ TRA to determine if it has an "interest adverse," or if it is a "disinterested person" only with respect to suing VEPCO on causes of action arising out of an alleged breach of a pre-petition coal supply agreement.

### B. Interest Adverse & Disinterested Person

Following the guidance of *AroChem*, to qualify TRA as special purpose counsel, the court must determine whether TRA holds or represents an interest adverse to the estate and is a disinterested person with respect to the causes of action existing against VEPCO that arise out of the alleged breach of a pre-petition coal supply agreement. The objectors assert that TRA cannot meet this standard on the basis that (1) TRA previously represented the Committee, on which VEPCO served as a member; and (2) TRA has a pending, contested fee application seeking in excess of $250,000 from the Debtor's estate, and, via litigation while this case was being administered in Chapter 11, TRA arranged for the assignment of an unrelated secured claim to the Committee for the benefit of unsecured creditors.

An attorney holds an "interest adverse" to the estate when that attorney "'possess or assert[s] any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or . . . possess a predisposition under circumstances that render[s] . . . a bias against the estate.'" *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985)). In turn, a "disinterested person" is a person that: "(A) is not a creditor . . . and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reasons of any direct or indirect relationship to, connection with, or interest in, the debtor . .

6

. or for any other reason." 11 U.S.C. § 101(14). Having either an "interest adverse" or not being "disinterested" is grounds to disqualify counsel under § 327(a). *E.g.*, *Pierce v. Aetna Life Insurance Company (In re Pierce)*, 809 F.2d 1356, 1362 (8th Cir. 1987) ("Although framed conjunctively, the conditions are applied disjunctively; failure to meet either will result in disqualification."). Both requirements "are congressionally established per se rules that a bankruptcy court must apply in exercising its approval power over the appointment of professionals." *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992).

      **1.**      **TRA's Representation of the Committee**

As the first ground for disqualifying TRA under § 327(a), the objectors assert that TRA's representation of the Committee somehow translates into a representation of the Committee members, including VEPCO. Thus, the objectors assert, TRA holds an interest adverse to the estate and is not a disinterested person.

TRA was counsel to the Committee – not VEPCO. It is axiomatic that representation of a committee is not the same as representing the individual members of that committee. *E.g.*, *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) ("[A] Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole, not to the individual members."); 7 *Collier on Bankruptcy* ¶ 1103.03[7] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2008) ("A professional retained by a committee represents the committee and only the committee, and the professional's fiduciary duty runs solely to the committee. The professional does not represent the members of the committee in their roles as members of the committee . . . .").

At all relevant times during the administration of this case while it was in Chapter 11, VEPCO was represented by its own competent counsel and was actively involved in the administration of the Chapter 11 estate. From the very beginning of this case, no doubt existed that the Committee and VEPCO eventually would become adversaries with regard to the pre-petition breach of contract litigation. For example, whenever the Committee discussed the estate's causes of action against VEPCO, it was excluded from those conversations. Based on the facts of this case, the court sees no indicia of an attorney-client relationship between TRA and VEPCO that would disqualify TRA under the standards of § 327(a).

Moreover, as 11 U.S.C. § 327(c) makes abundantly clear, TRA's representation of a committee

7

of creditors, or a group of individual creditors, does not disqualify it from employment unless there is an actual conflict of interest.[3]  *E.g.*, *In re Codesco, Inc.*, 18 B.R. 997, 1000-01 (Bankr. S.D.N.Y. 1982) (allowing counsel to the creditor's committee in the aborted Chapter 11 case to be counsel to the trustee in the Chapter 7 case for the purpose of suing the largest unsecured creditor of the estate).  In fact, if this case were still in Chapter 11, nothing would preclude TRA from litigating the merits of VEPCO's $89 million in filed claims.  *See generally* 7 *Collier on Bankruptcy* ¶ 1103.03[1][f] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2008) ("There is nothing inconsistent with a committee's fiduciary duty to its constituency in the committee's objecting to the claim of a purported member of that constituency. The committee's duty is to the group as a whole and not individual members of the group.").

Therefore, this is not a case where TRA is seeking to sue a former client, and the court can find no grounds on which to disqualify TRA under § 327(a) based on the fact that the Trustee seeks to retain it to sue a former Committee member.

**2.     TRA's Status as a "Creditor"**

The objectors list two grounds on which TRA is a creditor of the estate and is therefore not a disinterested person: TRA's claim for post-petition, pre-conversion attorney's fees, and the fact that TRA arranged for the assignment of a pre-petition claim from the claim holder to the Committee.

While TRA did arrange for the pre-petition claims of the Carl DelSignore Family Trust to be assigned to the Committee, that is not a claim held by TRA for its benefit – TRA is not the "creditor." Thus, no grounds exists to disqualify TRA based on the assignment of that claim.

---

[3] Of course, it is possible that TRA's post-conversion unsecured creditor clients may seek a result from the VEPCO litigation that is different from the result sought by the Trustee.  For example, the two interests may differ on what constitutes a fair settlement.  With regard to potential conflicts of interest, the court retains the discretion to disqualify counsel. *E.g.*, *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476 (3d Cor. 1998) (stating that "(1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion – pursuant to § 327(a) and consistent with § 327(c) – disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.").  Here, where the interests of the Trustee and TRA's unsecured creditor clients are currently aligned (and likely to remain so), the court sees no reason to disqualify TRA on the potential that a future conflict may arise.

8

With respect to TRA's claim for administrative expenses, 11 U.S.C. § 101(10)(A-B) specifically defines a "creditor" to be an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," or an "entity that has a claim against the estate of a kind specified in section 348(d) . . . ." Because TRA's right to collect fees for its professional services arose *after* the entry of the order for relief, TRA is not a "creditor" of the estate as the term is defined in § 101(10).[4] While § 348(d) treats post-petition, pre-conversion claims as if they had arisen before the entry of the order for relief that commenced the case, it specifically excepts from that treatment claims arising under § 503(b), which would include any fee awarded to TRA as Committee counsel.

Furthermore, every lawyer has an inherent conflict with a client over fees. TRA is not expected to work for free. The fact that TRA is already owed administrative expenses is no different from the fact that, once employed, TRA will have further claims against the estate for administrative expenses arising out of the anticipated litigation with VEPCO. In short, with respect to the matter in which TRA is to be engaged, its performance can in no way be impugned by the fact that it holds an unpaid, contested, administrative expense claim against the Debtor's estate. *See, e.g.*, *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987) (holding that an attorney is not rendered a creditor of the estate by holding an administrative claim for unpaid attorney's fees; to hold otherwise, "would virtually eliminate any possibility of legal assistance for a debtor . . . ."); *DeVlieg-Bullard, Inc. v. Natale (In re DeVlieg, Inc.)*, 174 B.R. 497, 503 (N.D. Ill. 1994) (holding under § 327(e) that "DBI has not demonstrated how the possession of administrative claims is adverse to the estate on any of the specified special matters on which RS&W will represent the trustee."). Holding a contested, pre-conversion administrative claim for services rendered to the estate is not a disqualifying event for the employment of special purpose counsel hired under 11 U.S.C. § 327(a).

---

[4] The facts of this case are distinctly different from those where counsel holds a pre-petition claim against the debtor for services rendered, and, therefore, is a creditor of the estate that is disqualified under § 327(a). *See generally*, Jay Lawrence WestBrook, *Fees and Inherent Conflicts of Interest*, 1 Am. Bankr. Inst. L. Rev. 287, 300-03 (1993) (describing a the predicament of a debtor's pre-petition lawyer as a "Catch 22" because if a lawyer is paid for pre-petition work, that payment may constitute an avoidable preference, and if the lawyer is not paid, the lawyer will be a creditor unable to represent the debtor under § 327(a)).

In sum, TRA is not a "creditor" of the estate as that term is used in 11 U.S.C. § 101(10), and even if the definition of "creditor" could be contorted to include post-petition administrative expense claims, that claim is wholly unrelated to the scope of TRA's anticipated employment. Likewise, with respect to the anticipated litigation with VEPCO, TRA does not hold any economic interest in the litigation that would tend to lessen the value of the estate, create a potential dispute in which the estate is a rival claimant, and TRA does not possess any predisposition that may result in a bias against the estate.

C.   **Confidential Information & Appearance of Impropriety**

Because the court has concluded that TRA meets the employment standards set forth in 11 U.S.C. § 327(a) with regard to the special purpose for which TRA is to be employed, the objectors contend that the court should nonetheless refuse approve TRA's retention based on the court's "broad discretion . . . over the appointment of professionals to work on behalf of the trustee and the estate." *Harold & Williams Dev. Co.*, 977 F.2d at 909. The basis for this contention is that (1) TRA obtained information marked as confidential by VEPCO during the course of its representation of the Committee, and (2) an appearance of impropriety exists should the court approve the retentiaon of TRA based on the facts of this case.

1.   **Confidential Information**

All of the alleged confidential information received by TRA in its representation of the Committee relates to the Debtor's dealings with VEPCO leading up to the filing of the Debtor's bankruptcy petition; i.e., the information marked as confidential is the very same material that would be subject to litigation in the anticipated lawsuit against VEPCO filed by TRA. As explained by VEPCO:

> In its representation of the Committee, of which [VEPCO] was a member, Thorp Reed requested and obtained confidential information and documents about prepetition events involving [VEPCO] and the Debtor from [VEPCO] itself. Thorp Reed also received confidential information from other members of the Committee, though Thorp Reed's own research and work product, and from various other sources. Under the Committee's bylaws, all matters discussed at any meetings of the Committee are confidential. . . . If Thorp Reed is retained by the Trustee in litigation against [VEPCO], Thorp Reed faces an untenable situation given its prior receipt of confidential information and documents, which information and documents cannot be disclosed to the Trustee. . . . By virtue of Thorp Reed's obligation to protect the confidential information and documents obtained in its capacity as counsel to the Committee, Thorp Reed is hopelessly conflicted in this matter.

(Document No. 1089, p. 9).

When pressed regarding the nature of the confidential communications and documents, counsel for VEPCO could only identify one telephone conversation between VEPCO's in-house counsel and TRA, and a few documents related to the pre-petition coal supply agreement and a pre-petition settlement of disputes arising out of that agreement.

The court takes seriously the objectors' concern that TRA is misusing confidential information that it gleaned from its representation of the Committee. Members of a creditor's committee are expected to freely consult committee counsel with respect to strategy and tactics for the purpose of achieving the greatest return to unsecured creditors in a Chapter 11 proceeding. Keeping sensitive information relayed by committee members confidential fosters open committee participation. When creditor confidences are relayed to committee counsel, it is a reasonable expectation that committee counsel should not be able to later reverse positions and use that confidential information against the former committee member. *In re Market Response Group, Inc.*, 20 B.R. 151, 152 (Bankr. E.D. Mich. 1982). This is the position taken by illustration 10 of § 121 of the Restatement, which asserts that a conflict of interest can arise because of an obligation to hold information confidential that a lawyer has assumed with regard to a non-client:

> Lawyer represents Association, a trade association in which Corporation C is a member, in supporting legislation to protect Association's industry against foreign imports. Lawyer does not represent any individual members of Association, including Corporation C, but at the request of Association and Lawyer, Corporation C has given Lawyer confidential information about Corporation C's cost of production. Plaintiff has asked Lawyer to sue Corporation C for unfair competition based on Corporation C's alleged pricing below the cost of production. Although Corporation C is not Lawyer's client, unless both Plaintiff and Corporation C consent to the representation under the limitations and conditions provided in § 122, Lawyer may not represent Plaintiff against Corporation C in the matter because of the serious risk of material adverse use of Corporation C's confidential information against Corporation C.

*Restatement (Third) Law Governing Lawyers* § 121 illus. 10 (2000).

In this case, however, insufficient indicia exists that VEPCO communicated confidential information to TRA as committee counsel regarding the estate's causes of action against it. For example, the Chapter 7 trustee, as the successor to the debtor-in-possession, now has the documents labeled as "confidential" by VEPCO. No evidence suggests that the conversation between VEPCO's in-house counsel and TRA involved anything more than general background facts involving the dispute between the Debtor and

11

VEPCO. Also, no indicia exists that the conversation was intended to be confidential. VEPCO was at all times represented by its own competent, sophisticated counsel. All parties knew from the very formation of the Committee that the Committee's and VEPCO's interests were adverse with respect to the pre-petition litigation between the Debtor and VEPCO. Whenever conversations took place concerning that litigation, the Committee members excluded VEPCO from the conversation.

Moreover, to the extent that VEPCO's claim against the Debtor arises out of the "confidential" documents, the Trustee would be entitled to discover those documents in its anticipated litigation against VEPCO. *See generally*, *Brittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003) (party waives confidentiality by putting the confidential information at issue in the litigation).

Based on the facts of this case, TRA's knowledge of "privileged" documents that are most likely to be discoverable in the anticipated litigation, and which are already in the possession of the Chapter 7 trustee, is not a disqualifying event. VEPCO was never TRA's client, and the court does not believe that VEPCO communicated any confidential information to TRA of the type that would cause TRA to have a conflict of interest of the type listed in illustration 10 of § 121 of the Third Restatement. *See, e.g.*, *Market Response Group, Inc.*, 20 B.R. at 153 (being persuaded that no conflict of interest existed in the case to prohibit the trustee from employing former committee counsel). TRA has denied that any confidential information was conveyed to it was not already in the possession or knowledge of the Debtor. For its part, VEPCO certainly has not identified any such communication.

In sum, the court can see no special advantage that was gained by TRA over VEPCO over and above what knowledge and information it rightfully had access to in its role as counsel to the Committee, and in pressing claims on behalf of the Committee, including those against VEPCO.

> **2.    Appearance of Impropriety**

The objectors argue that TRA should be disqualified from representing the Trustee in the litigation against VEPCO based on the appearance of impropriety. Namely, TRA previously represented the Committee of which VEPCO was a member, and TRA supported Teitz as the Chapter 7 trustee in a disputed election. While TRA was careful not to enter an agreement with Teitz regarding special purpose employment before he was elected, the topic was "discussed." It is too convenient, the objectors contend, that after supporting Teitz's candidacy for Chapter 7 trustee, Teitz would turn around and hire TRA as

12

special counsel to pursue a $100 million lawsuit.

As the Court of Appeals for the Fourth Circuit stated in *Harold & Williams Dev. Co.*, 977 F.2d at 910, "once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327, the discretion of the bankruptcy court [to disapprove otherwise qualified counsel] must be exercised in a way that it believes best serves the objectives of the bankruptcy system." In making that determination, the court should consider "the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *Id.*

Importantly, the selection of Teitz as the Chapter 7 trustee was lawful. His selection was ratified by order of this court following a hearing at which the court received evidence and heard argument from the parties regarding the disputed election. No appeal was taken. While the Trustee's selection of TRA as special counsel may appear to be less than serendipitous, the Trustee testified that he engaged in a selection process for special counsel, he consulted with certain creditors about his choice (although not required to do so), and, ultimately, he chose TRA. Both TRA and Teitz deny that any deal was struck on who would be special counsel before he was elected as the Chapter 7 trustee, and no evidence to the contrary was adduced.

Regarding the Trustee's selection of TRA, the court cannot say that he chose poorly. In the course of this case, the court has observed TRA's attorneys to be both diligent and competent. The TRA lawyers have demonstrated considerable skill, and they are already familiar with the case. Consonant with his duty to "close the estate as expeditiously as is compatible with the best interests of the parties in interest," 11 U.S.C. § 704(a)(1), the Trustee chose counsel that required the least amount of familiarization with the case and that apparently offered the best employment terms with a 25% contingency fee. As the law firm of choice of the Trustee, this court will not lightly deprive him of that choice. *See, e.g.*, *Codesco, Inc.*, 18 B.R. at 999 ("[T]he trustee should have wide latitude in determining who shall be employed to perform legal services for the estate. 'The relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously. Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel . . . .'") (citation omitted).

Regarding the appearance of TRA as former Committee counsel suing a former Committee member, the court does not believe – based on the facts of this case – that the court would be chilling open

13

committee participation in future cases. As the United States Trustee stated, no doubt ever existed between the members of the Committee that litigation would eventually be brought against VEPCO arising out of the pre-petition breach of the coal supply agreement.[5] VEPCO's participation in the Committee, and the other Committee members desire to have VEPCO aboard, was a two-way street. VEPCO could gain important insight into the financial condition of the Debtor, which, as VEPCO stated, is an important component of the merits of its pre-petition litigation with the Debtor. Similarly, the members of the Committee would have the opportunity to closely examine VEPCO's transactions with the Debtor. As stated by Michael Corleone in the *The Godfather II*, "Keep your friends close, but your enemies closer." Mario Puzo & Francis Ford Coppola, *The Godfather II* (1974). Both sides were posturing in this case, and allowing TRA to sue VEPCO should in no way chill future participation by committee members.

The court itself noted the divergent interests of VEPCO and the Committee in making its ruling on the election of Teitz as the trustee. As the court stated from the bench on September 7, 2007: "VEPCO's interest in the inception, pursuit, and resolution of the estate's claim against itself can hardly said to be aligned with the other unsecured creditors whose interest lie with the vigorous pursuit of the cause of action against VEPCO. A clear conflict of interest – both in appearance and actuality – regarding VEPCO vis-a-vis the other unsecured creditors exists."

The appearance of impropriety assertions by the objectors are not taken lightly by this court. However, in the court's opinion, none of the reasons advanced by the objectors, either individually or collectively, outweigh the Trustee's rational choice. While the objections to TRA's employment do not constitute mere "horrible imaginings," neither do they rise to the level that causes this court to fear that the integrity of the bankruptcy system is being sacrificed or unduly compromised. The court has had a front row seat to the rather extensive litigation that this case has wrought, both in its Chapter 11 and Chapter 7 phases. Much of the litigation has been highly contentious, the subject of shifting loyalties, and marked by the exercise of enlightened self-interest; in other words, the not unexpected rough-and-tumble of litigation. But, having observed firsthand those proceedings and the conduct of the parties now before it on this

---

[5] It has not escaped the court's notice that VEPCO's vociferous objection to TRA's employment is not itself entirely free from self-interest. In effect, its objection could be perceived as an opportunity to effectively exercise a veto over the opponent it is to face in the forthcoming litigation.

14

motion, and when considering the record as a whole, the court does not see any appearance of impropriety that would lead the court to disapprove of TRA's retention as special counsel.

### III. CONCLUSION

For the above stated reasons, the court will enter a separate order overruling the objections filed in response to the Trustee's application to employ TRA, and will enter the order submitted by the Trustee approving the retention of TRA as special counsel to the Trustee.